to make sure you're there for the petitioner. Yes, Your Honor. Heather Axford for the petitioner. Great. And for the government? Bo Bauman for the Attorney General. Yes. All right. So, Ms. Axford, you have requested three minutes for rebuttal. So that gives you seven minutes out of the gate. The floor is yours. Thank you, Your Honor. May it please the court. The facts of this case are not in dispute. The board found that a Honduran woman who has been kidnapped and tortured with the participation of a police officer in a country where such collusion between the police and gangs is widespread, and impunity for torture is near total, is not eligible for protection under the Convention Against Torture or Asylum. And I'd like to start by talking about the cat denial, because we frequently see cat analysis get short shrift before immigration judges and the board, despite frequent remands on the issue from this court. First, the IJ and board focus on the wrong perspective torturer. Ms. Garcia-Aranda has been tortured and fears torture by the 18th Street Gang. But the IJ found that, quote, given the insufficient evidence that it's more likely than not that government forces would be the person subjecting her to harm, she failed to demonstrate the harm she fears is committed by an entity the government is unable or unwilling to control, and therefore her cat clean is denied. And the board upheld that decision, stating that, quote, evidence does not support a finding that the police officer in question or any Honduran official has an interest in torturing her at this time. But the convention does not require her to show that government forces would be the ones torturing her or that they have an interest in torturing her. Acquiescence is distinct from interest or intent. And the question is whether a government official would turn a blind eye to her torture. It's not clear whether they misunderstood the claim or whether they were erroneously requiring that her torture be inflicted by government forces. But either way, remand is required. Where someone's already been tortured, the court should, at a minimum, make explicit findings as to the likelihood of future torture by that group. Garcia Aranda should not be required to determine as the government urges from the context why she's being removed to a country where she would where she has already been tortured. Doesn't matter when she's that that there's acquiescence. I mean, that that's the question. You know, private people can torture other private people. And as long as there's no government involvement whatsoever, there's nothing that Kat can do about it. Right. That's really true. And in a case like this, where we have that's what that's what isn't that that essentially what happened here. There was a policeman, which you rely on heavily a policeman who she she identified as part of the part of the first group. And so he's he either is a fulcrum for acquiescence or is not. And if he's not a fulcrum for acquiescence, then I'm not sure where What, what, what, what she can what she can gain by this. I think what's clear from this record is that this police officer, while being very important, you know, by being proof of past acquiescence. He's no aberration. I mean, and nobody doubts this on this on this record, but Garcia Ronda testified credibly about how many police officers are being paid by organized crime, either to actively assist or turn a blind eye to their criminal activities, which include torture. There's a in talking about Honduras is 95% impunity rate for murder Douglas Farad quotes a police officer, a Honduran police officer who states that the majority of his colleagues are being paid to buy member by organized criminal groups, they're being paid to quote not see anything and not say anything. I mean, I understand your point. And I want to talk about the standard in a minute but but the argument that you're making now sounds like nobody can ever be deported under any circumstances to Honduras. And is that your argument. No, Your Honor, and it's interesting that you that you say that because I can give you an example of a case where this court found that someone who had been tortured in Honduras by gangs did not establish a likelihood. And in that case, the court looked to other factors that mitigated against the likelihood of future torture. In that case, it was this case was as a lie and Marina V Wilkinson, where they pointed to the length of his stay in Honduras without further torture. The safety of similarly situated family members so they engaged in that fact specific analysis. And that just didn't happen here because they essentially the board relied exclusively on whether or not the government would be directly involved in her torture for finding that there wasn't likelihood that there wasn't a likelihood she'd be tortured in the future. And so that either, you know, they made no explicit findings about whether she would be tortured by the Mara which is her claim and so it's not clear to me whether they misunderstood her claim and thought she was saying she would be tortured again by that particular officer, or whether they were requiring that the that the government of Honduras, either be actively engaged in torture or have an interest in torture in torturing her, and neither of those are required by the convention, but I'm trying to figure out what you're arguing here. Maybe the BIA and the IJ didn't analyze this clearly but but you're saying that is your argument that your client has demonstrated that she's likely to be tortured by the gang, and that the police officer who was involved the last time will be involved again. The first part yes I think she has demonstrated that she will be tortured by the gang. I do, we are not alleging that it would necessarily be the same police officer that has already actually asked that would that would be again, but just that it would that would be a different argument but and what is the basis in the record for saying that the evidence supports it more likely than not, a government official would either endorse or turn a blind eye to this torture against your client. So I think I mean certainly her past torture with the participation of a government official is a very important factor in her favor it's maybe but we don't know whether he's a rogue private, I mean he's just acting privately or what. So what else are you relying on to show because you're not saying he's going to be involved again you're saying it's going to be somebody. So what's the evidence that somebody is going to be involved. So that's where I would look right that's where I would look to the country conditions in record here to show that this wasn't just one police officer, and she testified and and in record we have a 95% impunity rate for for murder that is attributed by country conditions expert Douglas for to the fact that many police officers are being paid by organized crime, specifically to turn a blind eye. Stop, let me stop you there because we're back at this very general rule for Honduras, at least that if you can allege that you've been extorted or harmed by a gang. You're getting relief under cap, because the country conditions show that the gangs and the government are frequently working. No, I think in that case we, you know, I think in that case, you look at, you know, a decision like the lion Moreno where we have just that but you need to have some mitigating factor. You know, so you've been tortured in the past, we have a record of high level collusion between the country and government and organized crime. If you are going to say okay, but this person is not eligible for cat relief, what this court has done in the past or supported when when the board has done is where there's other factors indicating that this person wouldn't so a person's ability to relocate. I mean so you're seems like you flip the presumption that the burden is on the petitioner to show more likely than not that they will be tortured. You're saying that in Honduras, at least the presumption is that you will be tortured and it's on the burden of the government to show some factors that might reflect that in this case you wouldn't. No, no, I don't think it would be a presumption, I think, you know, the regulations are very clear this is a totality of the circumstances analysis past torture is the number one is a number one factor and massive corruption and collusion with with the torture by the government is also a factor. That being said, it's not a presumption we still have to engage in a totality of the, of the circumstances analysis, and that didn't happen here like the, the, the, all, all the, the, that the board was focused on was whether the government would be her torture, and that's just not believe that's not the standard. Wait a minute. Yeah, if you go to section 1208.8 of the of the regulations. It's pretty clear that there has to be actions by the government acting in an official capacity for there to be for it to be for it to be actionable. Yeah, this is within the definition of torture, and I'll just read it, pain or suffering inflicted by a public official who's not acting under color of law shall not constitute pain or suffering inflicted by or at the instigation of or with the consent or capacity. I put in quick consent to or acquiesce in the pain or suffering inflicted by the public official who's not acting under color of law. So the, the crux here is was the person acting under color of law. Yeah, and it used to be critical to whether there's torture or not it's within the definition of torture. Right. And interestingly, after this decision came down, then Attorney General bar discussed exactly this in a case called matter of FAS. And he was very clear you know there is no rogue cop exception that the that the convention draws no categorical distinction between the acts of high and low level officials, and he explained that a public official regardless of ring acts under color of law when they exercise power possessed by the virtue of law and made possible only because they're clothed with the authority of law. So where as here, we have. With regard to the individual officer that we're talking about. What's the proof that he was acting under color of law, as opposed to just being a rogue officer. Because we're he and and again he is not an aberration and and and the record the record is very clear on that point, but where he and other police officers are being paid by organized crime, either to actively assist them or turned a blind eye to their criminal activities, they are misusing their power made possible because they're clothed in the authority of law, they are being paid to lend that authority to these criminal enterprises to provide them information that they have only because they are clothed in I think fits exactly within the definition proposed by by Attorney General bar. Now the board at the time did not have the benefit of that decision that decision came down afterwards but I think that in of itself would be a cause for remand so that they can one lay out exactly what they're saying and and think through this issue of under color of law because before that there was some question over you know the effect of whether someone is a rogue officer and and this decision really really deals with that head on. Oh, well you reserved three minutes for rebuttal so let's hear from Mr. Bowman. May it please the court Bo Bowman representing the Attorney General. So to start out with asylum. There's a very critical timeline. So first the immigration judge decides that this is a single motive case. After that, but before the board hands out its decision we get matter of LEA one matter of LEA one is a huge case in this area, and it makes the point that in cases like this one what matters is animus. So the board having seen this just a few weeks after LEA comes out agrees with the immigration judge that this is a single motive case, but as on top of the immigration judges holding that under the means to an end test from LEA one, there's no animus to demonstrate that this is family based persecution. The reason that that holding was valid is because of petitioners own testimony. So, why did I mean I think we're better off focusing, at least from from my perspective on the cat plank. Okay, I think that's really where we certainly where your adversary has focused her attention and I think that's where I'm, I'm focused primarily. So why did the BIA not apply. I mean, why isn't it the case that they applied the wrong stand. So, I think that the biggest disagreement between the two sides here is what the board is over what the board did. So the board is citing to all the correct legal standards in this case, and it's incorrect to say that they were only focused on governmental There is a requirement that higher officials be aware, or willfully blind to the. No. So, so this is how I read that that portion that sentence of the board's decision. They've cited to the correct legal standards in the previous paragraph and at the top. And what they're doing right now is just marching through a bunch of different buckets of evidence that are neither necessary nor sufficient so it's the Second Circuit's cause them. So all the board is doing there is simply suggesting that the petitioner has failed to demonstrate evidence of higher officials knowledge that would be helpful, but isn't necessary. To be a pretty tortured reading of, I mean, if the language of the BIA is opinion. Is that the evidence doesn't support a finding that the police officer in question that's the one guy, or any Honduran official has an interest in torturing the respondent at this time, or that members of the police engage in kidnapping, and that higher officials knew or remain willfully blind to the gun. So it seems like requirement, it's, it's saying that we're members of the police, not the particular officer be named by the petitioner but where in that country members of the police are engaged in kidnapping. It does seem that the BIA saying that higher officials have to be aware. No, I don't think that that's correct. So, in that sentence, the petitioners case is essentially that the board in this case applied three or four requirements out of whole cloth. I think that the better reading, especially because that sentence doesn't have the language of requirements or of a necessary showing is to say that the board is marching through different buckets of evidence that could have worked. So the first one is that the police officer in question or any Honduran official has an interest in torturing the respondent. Right. So, all that goes to is the likelihood of future torture or acquiescence. The key thing to know about CAD is, is that it's always forward looking. So the board is making an assessment and showing that just pointing to one police officer being in the house. Almost a decade ago, isn't sufficient evidence to suggest the police have an ongoing interest in either torturing the petitioner or acquiescing or torture. This is, this is the one thing I want to get across that I think Scott and confused in this case. This is not a color of law case, the board's analysis depends solely on whether petitioner has made an evidentiary showing that torture is likely to take place in the future, either. Either through the gang or with acquiescence of the police. It's got to be with the acquiescence of the police. Correct. Correct. Excuse me. So the second clause of that sentence. It says that members of the police either alone or in connection with gangs or cartels routinely engage in kidnapping for ransom and associated mistreatment. Again, this is a really anodyne statement that's just pointing to the COSM language. COSM, which is cited throughout. Then there's an and that imposes another requirement that higher officials knew or remain. But there's no language of requirement here again. And I just want to point out that all this language is coming from Second Circuit opinions, what the board's doing here is just marching through the evidence showing all of the failures of proof that, again, could have helped, but were not necessary in this case. There's a there's a separate round of arguments that what the board did here was fact finding. But I just want to point out that this is a huge stretch to call this fact. Petitioner started out her argument by saying that all that the facts in this case are not in dispute. That's correct. So with respect to the supposed board requirement to report past kidnapping. This one comes from the amicus brief. This is in fact, finding the BIA just included a harmless statement that there is no indication that the respondent reported the extortion or the kidnapping to the police. There's no mandatory report reporting requirement here. And this is just relying on evidence that's in the record. It's undisputed. There's no fact. I think there's two issues here. One is what does the record say here. The other is what is the standard that will guide the BIA in the future to make sure that there's no confusion because there seems to be a fair amount of confusion. So, so what is what is the proper standard. For a country like Honduras, where there are country condition reports that talk about Corruption and collusion between the gangs and the police. The standard has to rely on individualized evidence showing that there is a likelihood of torture in the future. It's always forward looking. And the problem with this case is, as was suggested when My colleague was giving oral argument, there has to be individualized evidence. If you allow for just a country conditions report With widespread problems of violence and gang activity to suffice, then As Judge Sullivan suggested, it's going to be very hard to deport anyone who came from Honduras. So what we're looking for here is some individualized evidence. The only individualized evidence in this case has to do with the police officer in the house where the kidnapping occurred. And that's just simply insufficient and that's There is more isn't there. I mean, doesn't the petitioner say that she also then attempted to report this to the police and No, your honor. Actually, in the record petitioner says that she did not attempt to report the kidnapping to the police, basically because she thought that the police might be on the gang side. And this just adds to the board's analysis. And that's why the board pointed out a failure to report now a failure to report. There's no requirement that she had tried, but this just all goes to the fact that we don't know enough and we don't have enough individualized evidence showing that if she's deported She will be subjected to torture with the acquiescence of the police officers. And I just want to point out that the argument made by petitioner with respect to fact finding is the idea that they engage in illicit fact finding They cite to de la Rosa V. Holder and all these cases. I just want to point out that, you know, In those cases, all of the ones that are cited by petitioner these deals with cases where the BIA reversed and IJ with with facts that were inconsistent with what the IJ found now the board here did not rely on any facts and its decision that were contrary to the IJ analysis. And I think I've marched through all my points with respect to cat. I'll yield the remainder of my time unless there are further questions. Okay. All right. Thank you. We'll hear from you. Thank you. Um, I do, I do want to just kind of My, my, my colleague talks, you know, says that there are these factors that are cited to in the board's decision. There's no language of requirement, but I actually don't think that's true. I think the language is, is, however, right. This is a decision where they are saying we're we are assuming this woman has been tortured. We are assuming that a police officer was involved, we are But I'm not even sure she says the police officer was involved. What she says is that she recognized a voice coming from another room that was that of a local police officer. Yes. Um, if you look on pages. I think it's pages 166 of the record. Um, she talks about him as being among them among the gang members who kidnapped her She also says on page 177 of the record that he was one of the people who never left. He was there the entire time. So it really it's this isn't someone who just happened to be there for a short period of time incurred uncontested testimony is one of the things that she talked about. She said, I understand that there was a police officer involved here and I understand your fear. Um, and so this, he wasn't someone who just had kind of happened to be passing by and that that is important. But, you know, here. Excuse me, that gets us back to that question of whether or not of the regulation that I read before. You can have a police officer there he can actually administer the torture. The question is, is he acting under color of law at the time. In other words, is he there wearing his uniform. If you take a person down to the police station, and you beat him. That's, and the person cop is there and he's wearing his uniform, and he's in the police station there's no question about that being under color of law. The only question here is whether this. In this case was this policeman under color of law or not, or was he just a rogue individual who was not acting under color of law, he was going to get a get a piece of the action. And that's, that's, that's, that's where Attorney General bars discussion in matter of of as which did come subsequent to this is so helpful because this is exactly what he's speaking to is kind of when he says there is no rogue police officer exception here, and a government official is acting under color of law, where they are misusing the power that is given to them because by virtue of law. And so that applies to this, how do we know that that that was true here. I think we, I think we have her credible testimony which again nobody, nobody, nobody can test that her understanding and this is both from this officer who she knew she knew this police officer because he was also being paid off by the by her drug trafficking relatives, but he and other police officers were being paid by organized crime specifically to either assist them or provide information or turn a blind eye to the general general statement from the country conditions that you're talking about. And also her and also her individualized experience because she had personally seen many, not just this police officer but many police officers be paid off both by organized crime and by the games, or do you have evidence that this person was also being paid off in addition to being present. Yes. Interestingly, the reason she the reason she recognized his voice was because he was an officer that she knew, and the reason she knew is because he was one of these police officers who was being paid by organized crime to sometimes assist and also turn a willful, you know, turn a blind eye to these criminal activity. No, no, he wasn't turning a blind eye. And they said, hey, we've got it we got a real possibility to make some money here we're going to grab this person and extort money out of them. And he says count me in, and he shows up. He's not wearing a uniform. He's a police officer by day, but he's an extorter by night. And that's, that's part of this criminal modus operandi, that doesn't count, even under the Attorney General's definition right because it wasn't. He wasn't misusing power possessed by virtue of law were made possible only because he was close with the authority of law. He was just a rogue officer who happened to be off duty and committing a crime. And that's that that does not count. I mean, I think, I think that the country conditions as well as her testimony here show that this is part of a larger pattern in which organized crime is they have police officers that they are paying to breach their, their responsibility to to intervene I mean that's that's why that's how we get to a 95% impunity rate in Honduras it's, you know, it's not by accident it's not due to lack of resources. It's because police officers are being paid, sometimes to actively assist sometimes to provide information and other times to, as the police officer, as the police officers says in in the Douglas Farah report, we don't see anything and we don't say anything they're being paid to breach their legal responsibility on on a wide level, but that's again seems to be really relying on the country conditions report. And so anybody who says look I have a certain amount of money and so therefore I'm going to be targeted by gangs and according to country condition reports, the police are in cahoots with the gangs, so I will be tortured I've met the standard under cap. I mean I think where someone hasn't I think where you don't have and this comes back to actual my colleague was saying where you don't have the in, you know, the specific facts of your case, this is a case where someone already has been tortured with the acquiescence of a police officer, you know, the regulations enumerate three, you know, three factors going towards likelihood of torture. And number one is past torture, and number three is these country conditions so we can't, we can't take the country conditions out, but the country conditions are also clearly not sufficient if you have only the country conditions, you don't have any particular evidence that the gang has an inclination to torture you as you know as as Garcia Ronda does, then that would be a really different than that would be a really different assessment and I think that would fail. Can you tell us exactly what you would like us to do. Sure, I would, I would like you to, I would like you to remand on. I would like I would like you to remand finding that the, in particular, the immigration or the the board's analysis of of the cat clean is legally erroneous, to the extent that it requires or focuses exclusively on future torture by police officers, you know, my, as opposed to acquiescence by police officers, there is no finding or no factor cited here about whether or not the police are likely to acquiesce, it focuses exclusively on the police is the police officer government officials interest in torturing her and, um, and their end and whether or not they will be actively participating in her torture that is legal error that is not consistent with the convention. I also think that the board needs to consider the Attorney General bars on decision and of as which they did not have the benefit of the first time around, finding that there is not a rogue officer exception, and I think there needs to be some fact finding, not by the board but by the judge on this very issue on this very issue that you've raised Judge Walker, about, about whether these office, this officer and the other officers that she believes would acquiesce are acting under color of law that's a really fact specific issue, and we just don't have that basic fact finding here. And so I think it needs to be remanded for further fact finding on that issue to make sure this is consistent with oh FAS, and I would like a finding that the that that, you know, the part of active participation or interest of the government is not required. And that what the court needs to look at is whether not just that but whether they would be acquiescent whether they would turn a blind eye to this to this torture. I think those are the kind of most obvious legal errors that really need to be addressed on remand. Well thank you both, we will reserve decision. We'll now move to the final argument.